GABRIEL WILLIAM ST. CLAIR AND SANDRA PRICE v. MAVIS ST. CLAIR
RAKESTRAW AND HUSBAND, OLAN RAKESTRAW

No. 8226SC1169

(Filed 3 April 1984)

**Evidence § 24; Rules of Civil Procedure § 32— unavailable witness—reading deposition into evidence error—no determination defendant served with notice**

    In a civil action in which plaintiffs sought to recover damages allegedly resulting from defendants' trespass to realty, trespass to chattels, conversion, intentional infliction of emotional distress, malicious prosecution, and abuse of process, the trial court erred in permitting the plaintiffs to read into evidence the deposition of the plaintiff St. Clair where, although the court did properly determine that Mr. St. Clair was unable to attend court, the record also showed that defendant was neither present nor represented at the taking of the deposition, and the court should have determined whether defendant had been properly served with notice. G.S. 1A-1, Rule 32.

    Judge ARNOLD dissenting.

ON writ of certiorari to review judgment entered by *Sitton, Judge.* Judgment entered 14 April 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 27 September 1983.

The defendant Mavis St. Clair Rakestraw is the only surviving child of the plaintiff St. Clair. They live next door to each other in Charlotte—Mr. St. Clair at 2108 Lombardy Circle and Mrs. Rakestraw at 2104. Though Mr. Rakestraw visited Charlotte occasionally, he had been working and for the most part living in Virginia for several years. The plaintiff Sandra Price, the daughter of a deceased son of Mr. St. Clair, is the niece of Mrs. Rakestraw; she lived in South Carolina, and held Mr. St. Clair's power of attorney to handle his property and affairs.

In this civil action the plaintiffs seek to recover damages allegedly resulting from defendants' trespass to realty, trespass to chattels, conversion, intentional infliction of emotional distress, malicious prosecution, and abuse of process. The trespass and conversion claims of Mr. St. Clair are based on allegations that while plaintiff St. Clair was away from home in the hospital, Mrs. Rakestraw, without authority, entered his premises and removed certain items of personal property belonging to him. The abuse of process, malicious prosecution and intentional infliction of emo-

tional distress claims of both plaintiffs are based on two court proceedings that Mrs. Rakestraw initiated—one to have Mr. St. Clair declared mentally incompetent, the other to nullify the power of attorney and to restrain Ms. Price from exercising it during the interim. The incompetency petition, among other things, contained allegations that Mr. St. Clair had terminal cancer, which he may not have known. The complaint in the other case contained allegations that the power of attorney was obtained by undue influence and fraud. One proceeding was filed 13 August 1980, the other 19 August 1980. Both proceedings were voluntarily dismissed by Mrs. Rakestraw on 18 September 1980, and this action was filed the next day.

In answering the complaint in this case Mrs. Rakestraw denied all claims, alleged that both proceedings were filed in good faith, and counterclaimed for slander, alleging that plaintiff St. Clair called her a thief. In answering the one claim against him, for conversion, Mr. Rakestraw denied participating in or authorizing the seizure of the articles involved, and moved to dismiss. His motion was eventually granted on 2 September 1981 by an order of summary judgment eliminating him from the case.

The remaining case against the defendant Mavis Rakestraw was on the calendar for trial during the 13 April 1982 session of Mecklenburg County Superior Court. When the calendar was called no lawyer acting for her was there and the court ascertained, by examining the file and questioning defendant and plaintiffs' lawyer, that defendant had no counsel of record, Judge Grist having permitted the lawyers that had represented her and Mr. Rakestraw since suit was filed to withdraw from the case several weeks earlier, but she had employed another lawyer, on some basis at least, who had discussed the case with plaintiffs' lawyer. That lawyer, sent for by the judge, stated that he had been paid $300 just to study the case, had not been engaged to try the case, and was not prepared to do so. Mrs. Rakestraw stated that she understood the lawyer was in the case for good, but that if he did not want to handle the case, she did not want him to. She also stated that: The lawyer had told her the case could not be reached for trial at that term, but had not told her he was not going to handle it; as a consequence she had not tried to obtain another lawyer or made any preparations to try the case, had not even notified her husband to be there, and that he could not

possibly make it to court from Virginia in time for the trial. After this discussion, the judge excused the lawyer from the case, but declined to continue the trial, which proceeded with defendant undertaking to represent herself. At the close of plaintiffs' evidence the claims for trespass, trespass to chattel, intentional infliction of emotional distress, and abuse of process were dismissed by the court. After all the evidence was in, the case had been argued on both sides, and the judge instructed the jury, verdict was rendered awarding Ms. Price $10,000 in damages for malicious prosecution, and Mr. St. Clair $10,000 for conversion and $8,000 for malicious prosecution.

Defendant's appeal from the judgment entered on the verdict was dismissed by the trial court for failure to timely serve the record on appeal; and the cause is before us on writ of certiorari. By cross-assignments of error, plaintiffs attempt to present several other questions for review.

*Warren & McKaig, by Joseph Warren, III, and India Early Keith, for plaintiff appellees.*

*Badger & Johnson, by David R. Badger, for defendant appellant.*

PHILLIPS, Judge.

Though the defendant contends with some force that the judge's refusal to continue the case improperly deprived her of a fair trial, by in effect requiring her to represent herself in this complicated and substantial case in which she had reason to believe counsel would assist her but no preparations for trial had been made, and her husband could not appear as a witness, the view of the appeal that we take makes it unnecessary to consider this contention.

The one assignment of error that does require determination pertains to the court permitting the plaintiffs to read into evidence the deposition of the plaintiff St. Clair. The court's ruling, pursuant to Rule 32(a)(4) of the North Carolina Rules of Civil Procedure, was based upon findings, which the affidavit of St. Clair's physician clearly supported, that he was unable to attend court because of illness and advanced age; but according to the

record defendant received no notice the deposition was going to be taken and its receipt into evidence was therefore improper.

Summons and complaint were served on defendant October 6, 1980, and the deposition was taken at plaintiff St. Clair's home October 28, 1980, three days before the defendant's first lawyer became counsel of record in the case by moving for an extension of time within which to file answer. Since the deposition was being taken before thirty days had expired following issuance of the complaint and summons, leave therefor was obtained from the court, as required by Rule 30(a) of the North Carolina Rules of Civil Procedure, and the court's order was attached to the notice, both dated October 13, 1980. Neither of the defendants nor their lawyer attended the deposition and before it was read into evidence, Mrs. Rakestraw, in opposing its admission, remarked to the court as follows:

This deposition was taken in my father's home. And, I live next door. And, Mr. Warren—I didn't know then—I knew later that he was who he was. He arrived with another attorney. And then, my niece, Sandra St. Clair Slade Price, she arrived in a car; and then, my sister-in-law, Margie Price, she—Margie St. Clair, she arrived.

All of these people went in my father's home. This was like two days before I had been told I never knew that there was a deposition. And, I was told that they took a deposition from my father.

And, I think the circumstances that worried me and bothered me that they were doing these things to my father. And, I didn't know what they were doing to my father. I felt real ill and worried and wondered and was anxious and wanted to help him; but I was helpless.

Rule 32 of the North Carolina Rules of Civil Procedure in pertinent part provides:

(a) Use of depositions.

At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any *party who was present or represented at the tak-*

*ing of the deposition* or who had reasonable notice thereof, in accordance with the following provisions:

. . . .

(4) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . that the witness is unable to attend or testify because of age, illness, infirmity . . . (Emphasis added.)

Though the court did properly determine that Mr. St. Clair was unable to attend court, since the record shows defendant was neither present nor represented at the taking of the deposition, the court should also have determined whether defendant had been properly served with notice. The record contains no indication that this question was addressed and the record does not show that any type of valid service was made on her. The record does reveal, however, that the notice addressed to Mrs. Rakestraw, which had been delivered to the sheriff, was returned unserved at the express request of plaintiffs' attorney. The damaging effect of the deposition is beyond question. Under the circumstances, therefore, we are compelled to conclude that its receipt into evidence was prejudicial error and that a new trial is required.

Too, even if defendant had been properly notified, the willingness of the plaintiffs to go ahead with the deposition without inquiring of defendant, who was next door, if she and her lawyer were going to attend, though not necessarily legal error, is nevertheless not to their credit. Strangers and lifetime enemies alike, engaged in litigation in this country, almost universally extend such courtesies to their adversaries; that the blood relative participants in this case could not do likewise is something to ponder, with sadness.

The merits of plaintiffs' several cross-assignments of error cannot be considered. Through them plaintiffs contend that the court erred in denying their motion to amend the complaint to allege defendant converted still other articles not previously alleged, by dismissing various of their claims at the end of their evidence, and in refusing to permit the jury to consider punitive damages in connection with plaintiffs' conversion and malicious prosecution claims. The purpose of cross-assignments of error, as

Rule 10(d) of the North Carolina Rules of Appellate Procedure makes plain, is to allow review of actions or omissions by the trial court which deprive the appellee of an *alternative* basis in law for supporting the judgment, order, or other determination from which appeal is taken. But plaintiffs' cross-assignments show no alternative ground for upholding the judgment that defendant appealed from; instead, they purport to show that the judgment was erroneously entered and an altogether different kind of judgment should have been obtained. Such issues can only be raised by appeal; and plaintiffs neither appealed from the judgment nor asked by their own petition for writ of certiorari that the errors now complained of be reviewed. *Stevenson v. N. C. Dept. of Insurance*, 45 N.C. App. 53, 262 S.E. 2d 378 (1980).

As to the defendant appellant's appeal, the judgment is reversed and the cause remanded for a new trial. As to the issues raised by the plaintiff appellees, the trial court's rulings are affirmed.

Affirmed as to plaintiff appellees.

Reversed and remanded as to the defendant appellant.

Judge EAGLES concurs in result.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

In her first assignment of error, defendant contends the trial court erred in requiring her to represent herself. Significantly, we note that the trial court did not require defendant to represent herself. The record indicates that prior to the case being calendared for trial, defendant had consulted a number of attorneys. One of those attorneys was allowed to withdraw because defendant refused to compensate her. Other attorneys consulted by defendant were never employed. When the case was called for trial, defendant was given every opportunity by the trial court to obtain counsel, but defendant failed to do so. When informed by the trial court that the case was properly calendared, that defendant had due notice of those circumstances, that plaintiffs were

ready for trial, and that the case would, therefore, proceed to trial, defendant failed to either object or to request a continuance. Defendant's first assignment of error preserved no question for our review, and it is, therefore, overruled. *See* Rule 10(b)(1) of the Rules of Appellate Procedure.

In her second assignment of error, defendant apparently contends that the jury award of damages to plaintiffs included a sum for attorneys' fees; again, this assignment of error is not related to any exception preserved at trial, and it is not considered. Appellate Rule 10(b)(1).

In her third assignment of error, defendant contends that use of plaintiff St. Clair's deposition at trial violated G.S. § 1A-1, Rule 32(a). Rule 32(a) permits a deposition to be used against a party "who was present or represented at the taking of the deposition or who had reasonable notice thereof. . . ." Defendant was not present or represented at the taking of plaintiff St. Clair's deposition and claims she did not receive notice of the taking of the deposition.

At trial, defendant did not object to the use of plaintiff St. Clair's deposition, but merely commented to the court on the circumstances surrounding the taking of the deposition. No question has been preserved under this assignment, and it is also not before us. Appellate Rule 10.

In her fourth assignment of error, defendant contends the trial court erred in allowing certain evidence to which defendant did not object at trial. This assignment likewise fails to preserve any question for our review. Appellate Rule 10(b)(1).

Plaintiffs contend the trial court committed several errors prejudicial to them. However, plaintiffs have not appealed from the judgment or brought their own petition for writ of certiorari to review the judgment. Instead, they have brought forward cross-assignments of error. The purpose of cross-assignments of error is to allow review to actions or omissions by the trial court "which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal was taken." Appellate Rule 10(d). The Drafting Committee Note that accompanies Appellate Rule 10(d) indicates that cross-assignments of error are in effect conditional assignments of

error by which an appellee may demonstrate alternative grounds for supporting the judgment in the event that prejudicial error is found in the original basis for judgment. Cross-assignments of error are not the correct procedural means for attacking all or part of a judgment, as plaintiffs have attempted to do here. *Stevenson v. N.C. Dept. of Insurance*, 45 N.C. App. 53, 262 S.E. 2d 378 (1980).

I find no error.